# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

**TRAMELL E. STARKS,**

    Petitioner,

v.                                                                                 Case No. 14-CV-1564

**MICHAEL DITTMAN,**

    Respondent.

## DECISION AND ORDER

        Tramell Starks, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Am. Habeas Petition, Docket # 20.) Starks was convicted of possession of a firearm by a felon and first-degree reckless homicide, and sentenced to fifty-five years in prison, consisting of thirty-six years of initial confinement followed by nineteen years of extended supervision. (*Id.* at 2.) Starks alleges that his conviction and sentence are unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

        Starks' convictions arose from the 2005 death of Lee Weddle. As summarized by the court of appeals in its 2016 decision, the facts are as follows.

        In 2005, police were dispatched to Lee Weddle's apartment after a neighbor called 911 to report that he heard a fight followed by several gunshots. (*State v. Starks*, 2016 WI App 41, ¶ 2, 369 Wis. 2d 223, 880 N.W.2d 182, Docket # 35-33.) Police arrived to find Weddle in a pool of blood, and he died shortly thereafter. (*Id.*) Law enforcement received an anonymous

tip that Starks was the shooter and that Antwon Nellum, Dwayne Rogers, and other unidentified people were present during the shooting. (*Id.*) Nellum told police he witnessed a fight between Starks and Weddle but left because he thought Starks "was going to do something real crazy." (*Id.*) As he was running out of the apartment, he heard four or five gunshots. (*Id.*) Rogers eventually told police that on the date in question, he witnessed a physical altercation between Starks and Weddle, after which Starks shot Weddle two times. (*Id.*) Rogers told police he heard Weddle say "man, you killed me," and heard three or four more shots as he was leaving the apartment. (*Id.*)

At Starks' trial, the State relied on the eyewitness accounts of three men, including Rogers, who testified they were present when the shooting occurred. (*Id.* ¶ 3.) The other eyewitnesses provided testimony very similar to that of Rogers, though one stated he left the apartment during the fight and was walking to his car when he heard shots fired. (*Id.*) The State also presented the testimony of Trenton Gray, Starks' cousin. (*Id.*) Gray testified that on the day of Weddle's murder Starks called him "in a state of distress." (*Id.*) As Gray recounted, "he was asking me if he can go to a place that I had been previously in my life up in North Dakota, would he be able to take refuge for some things that he believe[d] he had done." (*Id.*) When Gray asked Starks what was going on, he said, "I don't know, cuz, I think I just murdered somebody." (*Id.*) Gray stated that in a later conversation, Starks told him about the fight and named the person who provided the gun. (*Id.*) Gray further testified that Starks told him at a funeral that he wanted to kill another individual he believed "was telling on him about the murder." (*Id.*)

The jury convicted Starks of reckless homicide and possession of a firearm as a felon. (Docket # 35-1.) On appeal, Starks argued he was entitled to a new trial due to an error in the

jury instructions, a violation of the court's sequestration order, the State's failure to comply with a discovery demand, and insufficiency of the evidence. (Docket # 35-2.) The court of appeals affirmed. (*State v. Starks*, No. 2008AP790 (Ct. App. Wis. 2008), Docket # 35-5.)

Starks then filed a *pro se* motion for postconviction relief, arguing ineffective assistance of postconviction counsel for failing to raise claims of ineffective assistance of trial counsel. (Docket # 35-23 at 49–72.) The circuit court denied the motion (*id.* at 155–60), and the court of appeals affirmed on the basis that Starks' ineffective assistance of postconviction counsel claim was procedurally defaulted because Starks had not raised it in an earlier motion he had filed to vacate a DNA surcharge (*State v. Starks*, No. 2010AP425 (Wis. Ct. App. 2011), Docket # 35-15). The Wisconsin Supreme Court granted review and held that Starks, who was by then represented by counsel, had not defaulted his claim on that basis. (*State v. Starks*, 2013 WI 69, 349 Wis. 2d 274, 833 N.W.2d 146, Docket # 35-27.) Nevertheless, the court upheld the judgment on the grounds that Starks had not met his burden of showing ineffective assistance. (*Id.*)

Starks and the State both filed motions for reconsideration, largely agreeing with one another that the opinion contained errors that would be problematic for courts, counsel, and litigants in the future, although correction of these errors likely would not change the outcome for Starks. (Docket # 35-28 at 4–18.) On July 24, 2014, the Wisconsin Supreme Court denied the motion for reconsideration, although not without protest from concurring justices that, while the outcome was correct for Starks, the reasoning of *Starks* required clarification or correction on some points. (Docket # 35-28 at 2–3, 19–33.)

On November 20, 2014, Starks filed a new motion for postconviction relief in the circuit court alleging that newly discovered evidence showed that the prosecution's "star

witness," Trenton Gray, had perjured himself and fabricated his testimony against Starks. (Docket # 35-30 at 12.) The circuit court denied Starks' motion without an evidentiary hearing and the court of appeals upheld the denial. (*State v. Starks*, No. 2014AP2915 (Wis. Ct. App. 2016), Docket # 35–33.) On October 11, 2016, the Wisconsin Supreme Court denied Starks' petition for review. (Docket # 35-35.)

On December 17, 2014, Starks filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this court. (Habeas Petition, Docket # 1.) The case was stayed pending resolution of the state court proceedings on Starks' claim of newly discovered evidence entitling him to a new trial. (Docket # 15.) On November 7, 2016, I reopened the case. (Docket # 19.)

Starks filed an amended petition on November 11, 2016 to include the newly discovered evidence claim. (Docket # 20.) Starks thereafter filed a motion to expand the record to include copies of recorded phone conversations with Gray in which Gray allegedly admitted to testifying falsely at Starks' trial. (Docket # 24.) I denied this motion on the basis that § 2254(d)(1) limits review to the record that was before the state court that adjudicated the claim on the merits. (Docket # 33.) Starks also moved to amend his petition for a second time to add grounds of deficient jury instructions and a sequestration order violation (Docket # 22), which I denied on the basis that they were filed after the statute of limitations period and did not arise from the same core facts as the claims in the original pleading (Docket # 33). Starks' amended petition (Docket # 20) is now the operative petition in this case. The petition has been fully briefed and is ready for resolution.

**STANDARD OF REVIEW**

Starks' petition is governed by the Antiterrorism and Effective Death Penalty Act

("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

5

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

Habeas relief is available only for state court decisions that are contrary to federal law. This court may not review whether a state court properly applied its own state laws. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

"The operative decision under review is that of the last state court to address a given claim on the merits." *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) (citing *Greene v. Fisher*, 565 U.S. 34 (2011). In this case, there are three operative decisions: (1) the court of appeals decision of December 23, 2008 adjudicating, *inter alia*, Starks' *Brady* claim (Docket # 35-5); (2) the Wisconsin Supreme Court decision of July 12, 2013 on Starks' ineffective assistance of counsel claims (Docket # 35-27); and (3) the court of appeals decision of April 27, 2016 on Starks' claim of newly discovered evidence (Docket # 35-33).

## ANALYSIS

Starks' amended petition argues that he is entitled to a writ of habeas corpus due to (1) ineffective assistance of trial counsel, (2) ineffective assistance of postconviction counsel, and (3) newly discovered evidence. (Docket # 20 at 6–8.) In his opening brief, Starks also argues suppression of evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Docket # 37

6

at 5–7.)

## 1. Ineffective Assistance of Trial Counsel

In his habeas petition in this court, Starks argues that his trial counsel was ineffective for failing to call as witnesses Willie "Junebug" Gill, Dion Anderson, Mary Starks, Stanley Daniels, Mario Mills, and Deante Chambers, all of whom allegedly would have provided exculpatory evidence and impeached the State's key witness, Trenton Gray. (Docket # 20 at 6.) The State argues that the entire claim is barred by an independent and adequate state procedural ground: the *Escalona-Naranjo* rule. (Docket # 39 at 9–17.) The State also argues that Starks forfeited four of his six claims (concerning Anderson, Mary Starks, Daniels, and Chambers) by not raising them in his principal brief (*id.* at 7); that two of his claims (concerning Gill and Chambers) are barred by an independent and adequate state-law rule rejecting conclusory allegations (*id.* at 17–18); and that even if not procedurally barred, the entire Ground One claim fails on the merits (*id.* at 19–25).

### 1.1. Independent and Adequate State Ground

A federal court may not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment. *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* (internal quotation and citation omitted).

In Wisconsin, the *Escalona-Naranjo* rule bars a defendant from making a claim that could have been raised previously on a postconviction motion or a direct appeal, unless the defendant can show a sufficient reason for not making the claim earlier. *State v. Romer-*

*Georgana*, 2014 WI 83, ¶ 35, 360 Wis. 2d 522, 849 N.W.2d 668; *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994). When the state court clearly relies on the *Escalona-Naranjo* rule to deny a claim, it can be an independent and adequate state procedural ground precluding federal habeas review. *See Howlett v. Richardson*, 729 Fed. Appx. 461, 465 (7th Cir. 2018); *Perry v. McCaughtry*, 308 F.3d 682, 690–92 (7th Cir. 2002). Here, the Wisconsin Supreme Court discussed *Escalona-Naranjo*, but it did not clearly rely on it to deny Starks' ineffective assistance of trial counsel claim, because the court was not presented with that claim; rather, it was presented with Starks' ineffective assistance of appellate counsel claim. Thus, I do not find this claim procedurally defaulted on the basis of *Escalona-Naranjo*.

1.2. *Procedural Default (Failure to Exhaust State Remedies)*

Although not barred by *Escalona-Naranjo*, Starks' claim of ineffective assistance of trial counsel was procedurally defaulted for failure to exhaust at the state level. A federal court may not entertain a petition from a prisoner being held in state custody unless the petitioner has exhausted his available state remedies prior to seeking federal habeas relief. *See* 28 U.S.C. § 2254(b); *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). "This so-called exhaustion-of-state-remedies doctrine serves the interests of federal-state comity by giving states the first opportunity to address and correct alleged violations of a petitioner's federal rights." *Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007). Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus is the duty to fairly present his federal claims to the state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). For a constitutional claim to be fairly presented to a state court, both the operative facts and the controlling legal principles must be submitted to that court. *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). Whether a petitioner has done so depends on several

factors, including: (1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004) (internal quotation and citation omitted).

In his brief to the Wisconsin Supreme Court, Starks raised only two main arguments: (1) that his motion to vacate a DNA surcharge did not count as a prior motion under *Escalona-Naranjo*, and (2) that his ineffective assistance of postconviction counsel claim satisfied *Escalona-Naranjo*'s "sufficient reason" requirement to overcome the procedural bar to raising his ineffective assistance of trial counsel claim.[1] (Docket # 35-23 at 2–3.) Accordingly, the Wisconsin Supreme Court did not address the ineffective assistance of trial counsel claims directly, but instead addressed three issues: (1) whether Starks' motion to vacate a DNA surcharge is considered a "prior motion" under § 974.06(4), such that a defendant is required to raise postconviction ineffective assistance of counsel arguments in such a motion; (2) what the appropriate pleading standard is when a defendant alleges in a petition for writ of habeas corpus that his appellate counsel was ineffective; and (3) whether Starks actually received ineffective assistance of appellate counsel. (Docket # 35-23 ¶ 5.) Although an ineffective assistance of trial counsel argument is embedded in Starks' ineffective assistance of postconviction counsel claim as discussed below, it was not presented as an independent ground for relief. Accordingly, the Wisconsin Supreme Court did not analyze it as such and there is no decision on that claim for this court to review.

---

[1] Starks' initial motion for postconviction relief also presented ineffective assistance of trial counsel only as a sub-heading under ineffective assistance of postconviction counsel. (Docket # 35-23 at 50.)

### 1.3. *Exceptions to Procedural Default*

Procedural default due to failure to exhaust will bar federal habeas relief unless the petitioner can demonstrate both cause for and prejudice stemming from that default or he can establish that the denial of relief will result in a miscarriage of justice. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Cause to overcome a procedural default requires a showing "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must present evidence that the errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (quoting *United States v. Frady*, 456 U.S. 152 (1982) (emphasis omitted). The fundamental miscarriage of justice exception requires a showing that "a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (citation omitted).

In his reply brief in this court, Starks claims that precluding him from arguing that trial counsel was ineffective would result in a miscarriage of justice. (Docket # 40 at 1–2.) However, he makes no showing sufficient to satisfy the *Dretke* standard of a constitutional violation that probably resulted in the conviction of one who is actually innocent of the substantive offense. 541 U.S. at 393. Instead, he merely repeats his arguments that trial counsel was ineffective for failing to call Mario Mills or investigating "Junebug"'s phone records. Even if trial counsel were deficient on these grounds, Starks has fallen far short of showing that the deficiencies resulted in the conviction of one who is actually innocent. Thus, Starks has not met the standard for showing a miscarriage of justice necessary to excuse

procedural default.

In sum, Starks' Ground One claim of ineffective assistance of trial counsel is procedurally defaulted and Starks has failed to show circumstances excusing the default. Thus, Starks' Ground One claim does not entitle him to habeas relief in this court.

2.  *Ineffective Assistance of Appellate[2] Counsel*

Starks argues that appellate counsel should have raised four alleged errors by trial counsel: (1) not calling Mario Mills as a witness when Mills signed an affidavit saying he never saw Starks shoot anyone, (2) not calling Dion Anderson as a witness when he would have testified that two key witnesses had colluded to implicate Starks, (3) not investigating the phone records of Ray Gill ("Junebug"), which Starks claimed would have undermined the testimony of a key witness; and (4) not calling Starks' father and grandmother to testify when their testimony would have undermined that of a key witness. (*Id.* ¶ 66.) The Wisconsin Supreme Court addressed Starks' ineffective assistance of appellate counsel claims in its decision of July 12, 2013. (Docket # 35-27.)

The proper standard for evaluating whether appellate counsel was ineffective on habeas review is the familiar two-pronged analysis of deficient performance and prejudice enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Counsel's performance is deficient when it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. However, when the petitioner is challenging the selection of issues presented on appeal, "appellate counsel's performance is deficient under *Strickland* only if she fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (internal

---

[2] The Wisconsin Supreme Court construed Starks' claims of ineffective assistance of postconviction counsel as claims of ineffective assistance of appellate counsel. Thus, I refer to them as such here.

11

citation omitted). This is because appellate counsel is not required to raise every non-frivolous issue on appeal. *Id.* A petitioner demonstrates the requisite prejudice "only when appellate counsel fails to raise an issue that 'may have resulted in a reversal of the conviction, or an order for a new trial.'" *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001) (internal citation omitted). In other words, "there must be a reasonable probability that the issue not raised would have altered the outcome of the appeal had it been raised." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003).

The Wisconsin Supreme Court cited to *Robbins* and upheld the court of appeals' determination that the issues Starks' appellate counsel failed to raise were not clearly stronger than those appellate counsel did raise. (Docket # 35-27 at ¶¶ 66–72.) The court listed the arguments counsel did make, then analyzed each of Starks' four ineffective assistance of trial counsel claims and pointed out the weaknesses it perceived in each. (*Id.*) First, the court noted that Mills was a co-defendant who had been charged with the same crimes as Starks but took a plea bargain, and made his statement after he took the plea bargain and after Starks was convicted. (*Id.* ¶ 67.) The court thus found Mills' statement unreliable. (*Id.*) Second, regarding Anderson, the court noted that one of the witnesses had testified that he did not discuss the substance of his testimony with the other witness, and that the circuit court had found this credible. (*Id.* ¶¶ 68–69.) Third, the court pointed out that Starks presented no phone records to support the validity of his claim that "Junebug"'s phone records would have undermined the prosecution's case, and thus this was merely a conclusory allegation. (*Id.* ¶ 70.) Finally, the court noted that a jury may not have believed the testimony of Starks' relatives because of their family ties to Starks and because their testimony was, frankly, not credible. (*Id.* ¶ 72.) Thus, the court concluded, it was easy to imagine that trial counsel had made a strategic

choice not to put these relatives on the stand. (*Id.*)

The Wisconsin Supreme Court concluded that appellate counsel was not ineffective because the arguments Starks claims appellate counsel should have raised were "unsubstantiated, unpersuasive, or previously adjudicated. They are in no way 'clearly stronger' than the arguments [appellate counsel] raised." (*Id.* ¶ 73.) This conclusion was not unreasonable or contrary to federal law, and thus Starks is not entitled to habeas relief on this ground.

Starks also argues that his attorney's failure to investigate "Junebug"'s phone records prior to trial constituted ineffective assistance of counsel, and that therefore his appellate attorney rendered ineffective assistance of counsel for failing to raise that argument on appeal. (Docket # 37 at 5–8, Docket # 40 at 5.) The Wisconsin Supreme Court rejected this claim as "nothing more than a conclusory allegation," as Starks did not actually produce any phone records supporting the assertion that the records would have shown no calls between Starks and "Junebug" on the day of the murder. (Docket # 35-27 ¶ 70.) Starks' speculation that investigation of phone records would have undermined Gray's testimony falls far short of proving ineffective assistance of counsel under *Strickland*. Thus, Starks is not entitled to habeas relief on this ground.

    3.    *Newly Discovered Evidence*

In Ground Three of his amended petition, Starks claims that two letters from Trenton Gray to his son show that Gray testified falsely at Starks' trial, and that the prosecution elicited what it knew was false testimony from Gray. (Docket # 20 at 8.) In his opening brief, Starks argues that this newly discovered evidence entitles him to a new trial or an evidentiary hearing under Wisconsin law. (Docket # 37 at 10–18.) Whether the court of appeals ought to

13

have granted a new trial or an evidentiary hearing under Wisconsin law is a determination of state law that a federal court cannot disturb unless it was contrary to or involved an unreasonable application of federal law. This portion of the court of appeals' decision does not reference any federal law at all. (Docket # 35-5 ¶¶ 7–13.) Starks treated this issue as a state law issue at the state level and also in his habeas petition here. There is very little mention of Supreme Court case law in the relevant sections of Starks' habeas petition (Docket # 20 at 8), his accompanying briefs (Docket # 37 at 10–19, Docket # 40 at 5–7), or his appellate briefs (Docket # 35-30 at 24–35, Docket # 35-32 at 4–15). Because this is an issue of state law, and any constitutional dimension was not fairly presented to the state courts, this issue is not reviewable in habeas.

Starks does argue that the state court's failure to grant him a hearing based on these letters violated due process. (Docket # 37 at 18–19, Docket # 40 at 5–7.) Even construing this claim liberally, Starks does not show that the Wisconsin Court of Appeals unreasonably applied or contravened clearly established U.S. Supreme Court precedent in failing to grant him a hearing and rejecting his newly discovered evidence claim. Accordingly, Starks is not entitled to habeas relief on Ground Three.

    4.    *Prosecutorial Misconduct*

        4.1.    *Brady Violation*[3]

In his opening brief, Starks argues that the failure of the prosecution to provide the defense with the identity of "Junebug" constituted a *Brady* violation. (Docket # 37 at 5–7.)

---

[3] Starks' *Brady* claim is arguably abandoned on habeas review. (Docket # 39 at 32–35.) Starks' original petition in this court contained grounds for relief related to suppression of evidence in violation of *Brady*. (Docket # 1 at 7–9.) *Brady* then disappeared in the amended petition for habeas review, (Docket # 20 at 6–8), only to be resurrected in Starks' opening brief, (Docket # 37 at 5–7). I need not resolve the abandonment issue, as the claim fails on the merits.

Under *Brady*, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. *See also United States v. Wilson*, 481 F.3d 475, 480 (7th Cir. 2007). "The government has a duty to disclose evidence, regardless of whether the criminal defendant requests it, and that duty applies equally to impeachment and exculpatory evidence." *Ben-Yisrayl v. Buss*, 540 F.3d 542, 552 (7th Cir. 2008). For a *Brady* violation to exist, the defendant must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence is material to an issue at trial. *United States v. Stallworth*, 656 F.3d 721, 731 (7th Cir. 2011). "Suppression" occurs when "(1) the prosecution failed to disclose the evidence before it was too late for the defendant to make use of the evidence, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002). "Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Stallworth*, 656 F.3d at 731 (citation omitted).

In this case, on direct appeal Starks argued that the failure of the prosecution to provide him with the identity of "Junebug," whose phone Gray claimed to have been using when Starks confessed to him, constituted a *Brady* violation. (Docket # 35-2 at 25–27.) Starks argued the prosecutor was obligated to provide him with "Junebug"'s name because it would allow counsel to obtain exculpatory evidence in the form of phone records showing that no such call took place. (*Id*.)

In analyzing Starks' *Brady* claim on direct appeal, the court of appeals applied the test articulated in *State v. Sarinske*, 91 Wis. 2d 14, 36, 280 N.W.2d 725 (1979), *overruled by State v.*

*Wayerski*, 19 WI 11, 385 Wis. 2d 344, 922 N.W.2d 468 (2019), which largely mirrored *Brady* but also required that the evidence have been in the "exclusive" possession of the prosecution for there to be a due process violation.[4] (Docket # 35-5 ¶¶ 23–29.) The court of appeals pointed out that months before trial, the prosecutor gave Starks Gray's cell phone directory listing "Junebug" and his phone number, as well as documents showing that the name of the subscriber for that number was "Willie R. Gill." (Docket # 35-5 ¶ 26.) Because the prosecution had provided the defense with "Junebug"'s phone number and the subscriber name, the court of appeals concluded that "Junebug"'s identity was not in the exclusive possession of the State, and thus there was no violation requiring a new trial. (*Id.*)

The conclusion reached by the court of appeals was not contrary to or an unreasonable application of *Brady*. First, the prosecution did not suppress evidence; it disclosed the identity of "Junebug" to the defense months before the trial when it provided "Junebug"'s phone number and the name of the subscriber to that number. The only arguable[5] suppression was the federal agent not disclosing that "Junebug" was also known as "Ray Gill," because he did not believe it was exculpatory. (Docket # 37 at 6.) Second, Gill's nickname is neither favorable nor unfavorable to Starks. Third, Starks has not made even a minimal showing that knowledge of Gill's nickname was material or would have altered the result of the proceeding. Thus, the court of appeals' decision that there was no *Brady* violation was not contrary to, or an unreasonable application of, *Brady*, and Starks is not entitled to habeas relief on this

---

[4] Although *Sarinske*'s requirement that the evidence be in the exclusive possession of the prosecution to constitute a due process violation was overruled as inconsistent with *Brady*, that does not affect the outcome of this case. Even if the court applied an inappropriate standard, its conclusion is not inconsistent with or unreasonable under *Brady*.

[5] The court of appeals held that the federal agent's knowledge could not be imputed to the prosecutor in this case, and a prosecutor cannot suppress information he does not have. Because the knowledge here would fail *Brady*'s favorability and materiality tests regardless, I need not opine on that question.

ground.

*4.2.    Suborning Perjury*

Although Starks claims that the newly discovered evidence shows that the prosecution elicited what it knew was false testimony from Gray (Docket # 20 at 8), Starks does not elaborate this claim of prosecutorial misconduct in his opening brief. Thus, I deem this claim abandoned.

## CONCLUSION

To obtain habeas relief, Starks must show that a state court's decision was contrary to or an unreasonable application of federal law. Starks' ineffective assistance of trial counsel claims are procedurally defaulted. Starks' ineffective assistance of appellate counsel claims do not entitle him to habeas relief because the Wisconsin Supreme Court's decision that the arguments advanced were not clearly stronger than those advanced by appellate counsel was not contrary to or unreasonable under *Strickland* and its progeny. As to his claim of newly discovered evidence, Starks presented this claim almost exclusively as one of state law, and the court of appeals analyzed it as such; therefore, it is not cognizable in federal habeas review. Finally, the court of appeals' determination that the prosecution did not unconstitutionally suppress evidence by failing to disclose the identity of "Junebug" was not contrary to or an unreasonable application of *Brady*. Accordingly, Starks does not present any basis for relief under 28 U.S.C. § 2254. The petition will therefore be denied and this case dismissed.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of

the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

When issues are resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Each showing is a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.* at 485.

Jurists of reason would not find it debatable that Starks is not entitled to habeas relief. Thus, I will deny Starks a certificate of appealability. Of course, Starks retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that Starks' amended petition for a writ of habeas corpus (Docket # 20) is **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability shall not issue.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 6th day of May, 2019.

        BY THE COURT:

        *s/Nancy Joseph*
        NANCY JOSEPH
        United States Magistrate Judge